

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**07-CV 2847**



Ahmad, Nazir )

    Plaintiff, )

)

-against- )

Mr. Michael Chertoff, Secretary of DHS; )

Mr. Emilio T. Gonzalez, Director of USCIS; )

Ms. Mary Ann Gantner, )

USCIS District Director in New York; )

Mr. Robert S. Mueller, III, )

Director of the FBI; )

Mr. Mark J. Mershon, )

Assistant Director of the FBI in New York )

All sued in their individual )

and official capacities )

)

    Defendants. )

**PETITION FOR MANDAMUS**

Index No.

1.

Plaintiff, Mr. Nazir Ahmad, by and through his undersigned Attorneys, Manchanda Law Offices PLLC, files this Complaint seeking an order compelling Defendants to perform their duty of notifying Plaintiff of his Oath Ceremony, since they failed to perform this duty within almost two years after Plaintiff's Application for Naturalization was approved. Plaintiff seeks affirmative relief and damages against Defendants, Mr. Michael Chertoff, Secretary of DHS; Mr. Emilio T. Gonzalez, Director of USCIS; Ms. Mary Ann Gantner, USCIS District

Director in New York; Mr. Robert S. Mueller, III, Director of the FBI; Mr. Mark J. Mershon, Assistant Director of the FBI in New York, individually and collectively, to ensure that his rights under the Immigration and Nationality Act ("INA") and Administrative Procedure Act ("APA") are protected.

2.

This is a Mandamus Action since the Plaintiff has a clear right to the relief requested, the Defendants have a clear duty to perform the act in question, and no other adequate remedy is available. *See* **28 U.S.C.A. § 1361**.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction under both the mandamus statute, **28 U.S.C. § 1361**, and the federal question statute, **28 U.S.C. § 1331**. The latter statute, in combination with the **APA, 5 U.S.C. § 701 and 5 U.S.C. § 555 (b)**, which imposes a duty on agencies to conclude matters within a "reasonable time," vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld. This court also has the authority to

2

award costs and attorneys' fees under **28 U.S.C. §2412.**

4.

Venue is proper based on Defendants' residence and Plaintiff's residence Under **28 U.S.C. § 1391(e)**: Venue for the Mandamus Action, unless otherwise specified in some other statute, can be in any judicial district in which the defendant resides; in which a substantial part of the events or omissions giving rise to the claim occurred; or in which the Plaintiff resides.

### PARTIES

5.

Plaintiff Mr. Nazir Ahmad resides in Brooklyn, New York and is a permanent resident of the Unites States. Plaintiff applied for Naturalization on January 23, 2004.

6.

Defendants, Mr. Michael Chertoff, Secretary of DHS; Mr. Emilio T. Gonzalez, Director of USCIS; Ms. Mary Ann Cantner, USCIS District Director in New York; Mr. Robert S. Mueller, III, Director of the FBI; Mr. Mark J. Mershon, Assistant Director of the FBI in New York are subject to the jurisdiction and venue of this Court. They are sued in

their individual and official capacities for their failure to notify Plaintiff of his Oath Ceremony within a reasonable time after his Application for Naturalization was approved.

## FACTUAL ALLEGATIONS

7.

Plaintiff has been a permanent resident for years and applied for Naturalization on January 23, 2004. See **Exhibit A, I-797C, Notice of Action regarding Plaintiff's Application for Naturalization with a priority date of January 23, 2004.**

8.

Plaintiff was interviewed by Officer Christmas on April 8, 2005. His application was approved and Officer Christmas told him that the Immigration Service would send him the notification letter by mail within two weeks. See **Exhibit B, Form N-652 regarding interview by Officer Christmas, dated April 8, 2005.** Plaintiff was notified to have his fingerprints taken on September 13, 2005. See **Exhibit C, Fingerprint Notification dated August 31, 2005.**

9.

Plaintiff has not received any notification regarding his oath ceremony from the Immigration Service, even though his Application for Naturalization was approved almost two years ago. He called Customer Service at the USCIS at least once a month to inquire of his case status since April 2005. Each time he received the same response that no information was found in the system and he would receive a letter within 30 days. Even though Plaintiff sometimes called the Immigration Service three or four times per week, he has only received two letters regarding his inquires, which contain the same answers: "The processing of your case has been delayed. A check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open." See **Exhibit D, two copies of Inquires made by Plaintiff regarding his case status dated September 23, 2005 and July 13, 2006 respectively.**

10.

Plaintiff's brother, Mr. Munir Ahmad, applied for Naturalization on January 23, 2004, the same day Plaintiff

applied for Naturalization. They both became permanent residents based on their parents' citizenship. See **Exhibit E, I-797C, Notice of Action regarding Mr. Munir Ahmad's Application for Naturalization with a Priority Date of January 23, 2004.** Mr. Munir Ahmad was interviewed by Officer O'Flaherty on April 8, 2005, the same day Plaintiff was interviewed by Officer Christmas. His application was approved. See **Exhibit F, Form N-652 regarding interview by Officer O'Flaherty, dated April 8, 2005.** Mr. Munir Ahmad received the notification letter regarding his Oath Ceremony the same day and became a United States citizen on April 22, 2005. See **Exhibit G, Notice of Naturalization Oath Ceremony, dated April 8, 2005. Exhibit H, Certificate of Naturalization, dated April 22, 2005.**

11.

As stated above, Plaintiff applied for naturalization on **January 23, 2004**, more than **three years ago.** The New York City Office of the USCIS is currently processing N-400 cases (Application for naturalization) with receipt notice date of **January 15, 2006.** Plaintiff's application has been **unreasonably delayed for more than two years.** See **Exhibit I, USCIS New York City NY Processing Dates posted January**

**17, 2007**. Also, simply because a delay is "not unusual" does not make it reasonable. See *Jefrey v. INS*, 710 F. Supp. 486 (S.D.N.Y. 1989).

## LOSS OF SOCIAL SECURITY BENEFITS

## AND PLAINTIFF'S EMOTIONAL DISTRESS

12.

The delay in Plaintiff's Naturalization Application due to pending security checks is causing extreme hardship to Plaintiff and his family. Plaintiff was married in Pakistan in January 2006. Since he has a full-time job and has to take care of his parents in the Unites States, he has not been able to go back to Pakistan to visit his newly-wed wife for more than a year. Moreover, due to the high expense of international flight and unexpected processing procedure of security clearance he is unable to make travel plans.

13.

As a Permanent Resident, Plaintiff is not able to immediately bring his wife to the United States. Applications for alien relatives filed by a Green Card

spouse take a minimum of four years, perhaps longer, considering the large work load of the Immigration Service. Such a long separation has caused extreme difficulties to both Plaintiff and his wife. His wife has been calling him three or four times per week, since she is worried that the couple will have to separate for four years. Plaintiff has also called his wife a lot and was deeply depressed and worried. The newly wed couple has suffered a lot from emotional distress because of the unreasonable delay of the processing of Plaintiff's naturalization. The separation between him and his wife is causing extreme hardship on him and his wife.

"It is my," Dr. Reich, Plaintiff's psychologist stated, "professional opinion as a psychologist that **Nazir Ahmad has developed an Adjustment Disorder with Mixed Anxiety and Depressed Mood as a direct result of living separate and apart from his wife, Saima Bibi, who is still living in Pakistan.** His symptoms include **sleep disturbance, poor appetite, weight loss, difficulty focusing and concentrating, persistent sadness, chronic anxiety, and crying spells.**" See **Exhibit J, Affidavit of Doctor Stephen Reich.**

"Nazir Ahamd is presently living without meaning,

content or purpose. He got married because he wishes to have a family, and finds himself separated from his wife for one year, with no resolution of his conflict in sight. In my opinion, **it represents an extreme hardship to Nazir Ahmad to continue a life of separation from his new wife,** who continues to live in Pakistan. It would clearly be in his best interest if Saima Bibit could join him in the United States." See **Exhibit J, Affidavit of Doctor Stephen Reich.**

14.

Also, Plaintiff has to spend a large amount in costs on international phone calls. Further, Plaintiff cannot enjoy the tax benefits of filing joint tax return with his spouse, due to the unreasonable delay of Plaintiff's naturalization.

15.

The allegations in this Complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction. See *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir.1980).

**LEGAL BASIS**

## TEST OF JURISDICTION

16.

The terms of **8 U.S.C. § 1361** provide: The District Courts shall have original jurisdiction of any action in the nature of Mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

17.

To determine whether jurisdiction is appropriate in actions in which unreasonable delays in agency actions are challenged, courts use the elements required to warrant relief to assess whether the plaintiff has established a prima facie case, warranting the exercise of jurisdiction over the dispute. See *Hernandez-Avalos*, 50 F.3d at 844; *Carpet*, 656 F.2d at 566-67; *Ocuto Blacktop and Paving Co., Inc. v. Perry*, 942 F.Supp. 783, 786 (N.D.N.Y.1996). "The test for jurisdiction is whether mandamus would be an appropriate means of relief." See *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir.1980) (citing *Carter v. Seamans*, 411 F.2d 767, 770 (5th Cir.1969)).

18.

Thus, federal jurisdiction to grant a Writ of Mandamus depends upon three elements: "A plaintiff must show a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available." See *United States v. O'Neil*, 767 F.2d 1111, 1112 (5th Cir.1985) (quoting *Green v. Hedler*, 742 F.2d 237, 241 (5th Cir.1984)).

## MANDATORY DUTY TO ACT

19.

Although the DHS and USCIS (formally known as INS) is vested with broad discretion in making the ultimate decision whether to grant an application for adjustment to permanent resident status, it has a non-discretionary duty to process the application **within a reasonable time.** This duty may be enforced through Mandamus or Injunctive Relief. See *Yu v. Brown*, 36 F.Supp.2d (D.N.M.1999); *Agbemaple v. INS*, 1998 WL 292441. See also **5 U.S.C. § 555(b)** (agency required to conclude a matter presented to it "within a reasonable time"); **8 C.F.R. § 245.6** ("[e]ach applicant for adjustment of status under this part shall be interviewed by an immigration officer"); **id. § 245.2** ("the applicant

shall be notified of the decision of the director, and, if
the application is denied, the reasons for the denial").

20.

Also, Defendants owe a duty mandated by the **APA, 5
U.S.C. § 701**, which imposes a duty on agencies to conclude
matters within a **"reasonable time."** The **APA, 5 U.S.C. § 555
(b)**, provides in relevant part: "With due regard for the
convenience and necessity of the parties or their
representatives and within a reasonable time, each agency
shall proceed to conclude a matter presented to it." The
**APA** does not provide an independent basis of subject matter
jurisdiction. See *Califano v. Sanders*, 430 U.S. 99, 107
(1977). However, a federal district court has jurisdiction
over "all civil actions arising under the Constitution,
laws, or treaties of the United States." See **28 U.S.C. §
1331**. This statute, in combination with the **APA**, vests the
court with jurisdiction to compel agency action that is
unreasonably delayed or withheld. See *Sierra Club v.
Glickman*, 156 F.3d 606, 617 (5th Cir.1998) (holding that a
suit to compel agency action could be brought under APA);
see also *Fu v. Reno*, Civ. A. 3:99-CV-0981-L, 2000 WL
1644490 (N.D.Tex. Nov. 1, 2001) (same).

21.

"[a]dministrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to perform." **Forest Guardians, 164 F.3d at 1269.** Thus, "a court may require an agency to take action upon a matter, without directing how it shall act." **Id.** at 1271 (quoting **Attorney General's Manual on the Administrative Procedure Act, at 108 (1947)).**

22.

Most courts have not hesitated to exercise jurisdiction to compel the performance of this duty. See *Paunescu v. Immigration and Naturalization Service*, 76 F.Supp.2d 896 (N.D.Ill.1999). Characterizing the plaintiffs' experience as a "bureaucratic nightmare," the court ordered the Agency to grant the plaintiffs all relief "to which they would have been entitled had defendants processed their applications in a timely fashion." Id. at 903. Also *see Marcetic v. Immigration and Naturalization Service*, 1998 WL 173129 (N.D.Ill.1998); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1182 (2d Cir.1978) (duty to act on visa application); *Yu*, 36 F.Supp.2d at 931 (duty to process application for adjustment of status within reasonable

time); _Agbemaple v. INS_, 1998 WL 292441 *2 (N.D.Ill. May 18, 1998) (same); _Fraga v. Smith_, 607 F.Supp. 517, 521 (D.C.Or.1985) (duty to process citizenship applications).

23.

"In our opinion, when an agency is required to act--either by organic statute or by the **APA**--within an expeditious, prompt, or reasonable time, **§ 706** leaves in the courts the discretion to decide whether agency delay is unreasonable." See **Forest Guardians, 164 F.3d at 1271**. The adjudication must occur within a reasonable time. A contrary position would permit USCIS, DHS and other related agencies to delay indefinitely. Congress could not have intended to authorize potentially interminable delays.

24.

As a matter of law, [the Plaintiff] is entitled to a decision (as to his application to USCIS) **within a reasonable time**, and that it is within the power of the court to order USCIS to process the application. see Agbemaple v. INS, 1998 WL 292441 *2; see also **2 Am.Jur.2d Administrative Law § 379** ("Even though agency action may be subject to no explicit time limit, a court may compel an agency to act within a reasonable time.")

25.

In this case, Plaintiff's Application was already approved. However, he has not received the notification of his oath ceremony for almost two years, which caused extreme hardship to both him and his spouse. Defendants owe Plaintiff a non-discretionary duty to complete the processing of Plaintiff' naturalization **during a reasonable time.**

## UNREASONABLE DELAY

26.

Decisions from many jurisdictions suggest that delays **approximating two years from the date of filing** are unreasonable. See, e.g. _Paunescu v. INS_, 76 F.Supp.2d 896, 900-901 (N.D.Ill.1999) at 902 (2 year delay); _Yu_, 36 F.Supp.2d at 935 (2 1/2 year delay); _Agbemaple_, 1998 WL 292441 *2 (20 month delay); _Jefrey v. INS_, 710 F.Supp. 486, 488-89 (S.D.N.Y 1989) (16 month delay).

27.

As shown above, Plaintiff's brother, Mr. Munir Ahmad, and Plaintiff applied for naturalization on the same day, and

their applications were approved by the Immigration Service on the same day. Mr. Munir Ahmad became a United States citizen on April 22, 2005. However, Plaintiff's naturalization has been unreasonably delayed for almost two years, which has caused extreme hardship to both him and his spouse. Also, Plaintiff has been unable to enjoy the tax benefits of being married because of the unreasonable delay of his naturalization.

## CLEAR RIGHT TO THE RELIEF

### 28.

In order to prove Plaintiff has a clear and certain right to Mandamus Relief, Plaintiff has to show that (1) he has no other adequate remedy available and (2) he has established a *prima facie* case that Defendants have violated the non-discretionary duty owned to him.

## NO OTHER REMEDY AVAILABLE

### 29.

Plaintiff has no other remedies available. First, there are no administrative remedies to exhaust because Plaintiff is not challenging a final agency decision. See <u>Yu</u>, <u>36 F.Supp.2d</u>. Second, Plaintiff's Application for

Naturalization got approved. Unless and until the DHS/USCIS completes Plaintiff's naturalization, Plaintiff remains in perpetual uncertainty. He cannot become a United States Citizen and bring his wife to the US or seek judicial review of an adverse decision on his application.

30.

Also, Plaintiff contacted Defendants via THE customer service number of USCIS once a month without a response, and thus it proves that no other remedy is available.

31.

"By definition, a claim of unreasonable delay cannot await final agency action before judicial review, as the very lack of agency action is what gives rise to the complaint." **2 Am.Jur.2d Administrative Law § 379; TRAC, 750 F.2d at 75** (the lack of final order is the "gravamen" of the complaint and does not preclude judicial review); **Public Citizen Health Research Group, 740 F.2d at 32; Deering Milliken, 295 F.2d at 865 (4th Cir.1961)**. Likewise, Plaintiff has no administrative remedies available to him at this stage and "[i]t would indeed be ironic if the very delay now under attack which prevents the exhaustion of administrative remedies through no fault of the plaintiffs,

constitutes a barrier to this Court's jurisdiction." See *Caswell v. Califano*, 583 F.2d 9, 14 (1st Cir.1978).

32.

Plaintiff has established that there is no other adequate remedy available for the harm he seeks to redress. He is afforded no means, other than resort to this Court, to challenge this alleged agency malfeasance. See *Forest Guardians*, 164 F.3d at 1269, *Wan Shih Hsieh v. Kiley*, 569 F.2d at 1182; *Rahman*, 884 F.Supp. at 787; *Agbemaple*, 1998 WL 292441 *2.

## PRIMA FACIE CASE ESTABLISHED

33.

Plaintiff has established a *prima facie* case that Defendants have unreasonably delayed the completion of processing of his application. Plaintiff applied for Naturalization on January 23, 2004, **more than three years ago**. This is on its face an unreasonable amount of time to process a routine application.

34.

Further, Mr. Munir Ahmad and Plaintiff applied for

18

naturalization on the same day, and their applications were approved by the Immigration Service on the same day. Mr. Munir Ahmad became a United States citizen on April 22, 2005. As proved above, Plaintiff applied for naturalization on **January 23, 2004**, more than **three years ago**. The New York City Office of USCIS is currently processing N-400 cases (Application for naturalization) with receipt notice date of **January 15, 2006**. Plaintiff's application has been **unreasonably delayed for more than two years,** which is much longer than the delay in the above-mentioned cases. This is sufficient to establish that Defendants have unreasonably delayed in acting on Plaintiff's application. For the purposes of establishing jurisdiction Plaintiffs are entitled to the inference that a delay of this length is unreasonable. See *Agbemaple*, 1998 WL 292441 *2.

35.

An applicants for status adjustment, who waited more than one year for a decision by the USCIS, has already established a *prima facie* case for a Mandatory Injunction under the **Administrative Procedure Act (APA);** the USCIS owes a clear duty to process the application within a reasonable time, the agency's duty was mandatory and not discretionary, and the applicant had a clear right to

relief based on the length of delay and the lack of other means to challenge the agency's failure to act. See **5 U.S.C.A. §§ 555(b), 706(1); Immigration and Nationality Act, 8 U.S.C.A. § 1103; 8 C.F.R. § 245.2.**

## JURSIDICTION ESTABLISHED

36.

More to the point, courts have specifically recognized jurisdiction under **28 U.S.C. § 1331** and the **APA, 5 U.S.C. § 701 & 555(b)** to hear challenges to USCIS delays in processing visa, Lawful Permanent Resident, and citizen applications. See <u>Fraga v. Smith</u>, 607 F.Supp. 517, 520 (D.Or.1985) (jurisdiction under APA for challenge to INS (now USCIS)delay in processing citizen applications for foreign born citizens); <u>Sze v. INS</u>, 1997 WL 446236, *5 (N.D.Cal.1997) (jurisdiction under **28 U.S.C. § 1331** for challenge to delay in processing naturalization applications because the issues in the case require interpretation of federal immigration statutes and regulations). "Our function in such cases is to assure the vitality of the congressional instruction that agencies conclude matters presented to them 'within a reasonable

time.' See **Amer. Feder. of Gov. Employees, AFL-CIO, 790 F.2d at 117.**

37.

Mandamus jurisdiction has been established in many cases under similar circumstances to those in the case before the Court. See Yu v. Brown, 36 F.Supp.2d 922, 932 (D.N.M.1999). One of the plaintiffs in Yu had submitted her application for legal permanent residence two and a half years earlier. Id. She later learned that her fingerprints had not cleared and refiled her fingerprint card. Id. Judge Vasquez concluded that the defendants, including the INS, had a non-discretionary duty to process the plaintiffs' applications and held that the defendants had breached this duty by failing to act on Yu's application within a year of the time she refiled her fingerprint card. Id. at 933. Other courts have found that the agency had a mandatory duty to adjudicate applications for adjustment of status. See, e.g., Iddir v. I.N.S., 301 F.3d 492, 500 (7th Cir.2002) ("the relevant statutes and regulations confirm that the INS did have the duty to adjudicate the appellants' applications in a reasonable period of time."); Razik v. Perryman, Nos. A76-775-899-902, 2003 WL 21878726, *2 (N.D.Ill. Aug. 7, 2003); Krishnamoorthy, v. Ridge, No.

03 C 415, 2003 WL 21204051 (N.D.Ill. May 19, 2003);
*Setharatsomphou v. Reno*, No. 98 C 7076, 1999 WL 755292
(N.D.Ill. Sept. 27, 1999); *Paunescu v. INS*, 76 F.Supp.2d
896, 900-901 (N.D.Ill.1999); *Agbemapble v. I.N.S.*, No. 97 C
8547, 1998 WL 292441, *2 (N.D.Ill. May 18, 1998).

38.

As proved above, Plaintiff applied for naturalization
on **January 23, 2004**, more than **three years ago**. The New
York City Office of the USCIS is currently processing N-400
cases (Application for naturalization) with Receipt Notice
date of **January 15, 2006**. Plaintiff's application has been
**unreasonably delayed for more than two years,** which is much
longer than the delay in the above-mentioned cases.

## LOSS OF SOCIAL SECURITY BENEFITS
## AND PLAINTIFF'S EMOTIONAL DISTRESS

39.

The delay in Plaintiff's Naturalization Application
due to pending security checks is causing extreme hardship
to Plaintiff and his family. He has not been able to go
back to Pakistan to visit his newly-wed wife for more than
a year. His wife has been calling him three or four times

per week, since she is worried that the couple will have to separate for another four years. The separation between him and his wife is causing extreme hardship to him and his wife.

"It is my (Doctor Stephen Reich) professional opinion as a psychologist that **Nazir Ahmad has developed an Adjustment Disorder with Mixed Anxiety and Depressed Mood as a direct result of living separate and apart from his wife, Saima Bibi, who is still living in Pakistan**. His symptoms include **sleep disturbance, poor appetite, weight loss, difficulty focusing and concentrating, persistent sadness, chronic anxiety, and crying spells**." See **Exhibit J, Affidavit of Doctor Stephen Reich**.

"Nazir Ahamd is presently living without meaning, content or purpose. He got married because he wishes to have a family, and finds himself separated from his wife for one year, with no resolution of his conflict in sight. In my opinion, **it represents an extreme hardship to Nazir Ahmad to continue a life of separation from his new wife**, who continues to live in Pakistan. It would clearly be in his best interest if Saima Bibit could join him in the United States." See **Exhibit J, Affidavit of Doctor Stephen Reich**.

40.

Also, Plaintiff and his wife have to spend a large amount of money on international phone calls and plaintiff cannot enjoy the tax benefits of filing joint tax return with his spouse, due to the unreasonable delay of Plaintiff's naturalization.

41.

Thus, Defendants have a ministerial duty to complete the processing of Plaintiff's application and may not unreasonably delay the performance of that duty.

## A SEPARATE HEARING FOR THE PURPOSE OF THE DETERMINING THE AMOUNT OF DAMAGE IS REQUESTED

42.

"It is my (Doctor Stephen Reich) professional opinion as a psychologist that **Nazir Ahmad has developed an Adjustment Disorder with Mixed Anxiety and Depressed Mood as a direct result of living separate and apart from his wife, Saima Bibi, who is still living in Pakistan.** His symptoms include **sleep disturbance, poor appetite, weight**

loss, **difficulty focusing and concentrating, persistent sadness, chronic anxiety, and crying spells.**" See **Exhibit J, Affidavit of Doctor Stephen Reich.**

"Nazir Ahamd is presently living without meaning, content or purpose. He got married because he wishes to have a family, and finds himself separated from his wife for one year, with no resolution of his conflict in sight. In my opinion, **it represents an extreme hardship to Nazir Ahmad to continue a life of separation from his new wife,** who continues to live in Pakistan. It would clearly be in his best interest if Saima Bibit could join him in the United States." See **Exhibit J, Affidavit of Doctor Stephen Reich.**

Plaintiff hereby requests a separate hearing for the purpose of determining the amount of damages he has suffered as a result of Defendants' delay of his naturalization. Plaintiff is entitled to the emotional pain, the loss of social security benefits and tax benefits he has suffered for the unreasonable delay of his application process, including Attorneys' Fees for filing this lawsuit. See _Adelaida Garcia v. Vernon Mcaninch_, 435 F. Supp. 240; 1977 U.S. Dist. Lexis 14720.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF 5 U.S.C. § 555 (b) FOR FAILURE TO COMPLETE PROCESSING OF PLAINTIFF'S APPLICATION FOR OVER TWO YEARS AFTER IT WAS APPROVED

43.

Plaintiff repeats and realleges paragraphs 7-12.

44.

Defendants failed to complete Plaintiff's naturalization within a reasonable time after the application was approved, which violates **APA, 5 U.S.C. § 555 (b)**: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."

### SECOND CAUSE OF ACTION

### VIOLATION OF 5 U.S.C. § 555 (b) FOR FAILURE TO RESPOND TO PLAINTIFF'S INQUIRIES

45.

Plaintiff repeats and realleges paragraphs 7-12.

46.

Plaintiff inquired many times but did not receive any meaningful response regarding his oath ceremony for more than two years after his application for naturalization was approved. This is a violation of **APA, 5 U.S.C. § 555 (b).**

## PRAYERS FOR RELIEF

WHEREFORE, on the basis of the foregoing, Plaintiff prays that this Honorable Court:

1. Order that Defendants complete the processing of Plaintiff's Application for Naturalization without any further delay.

2. Award Plaintiff damages for the financial loss (including the loss of social security benefits, tax benefits, etc.) and the emotional depression he has suffered, of the amount determined by a separate hearing together with Plaintiff's Court Costs and Attorney's Fees.

Dated:    New York, New York
          April ___7___, 2007

                    Respectfully submitted,

                    _____

                    By: Rahul Manchanda, Esq.
                        Manchanda Law Office PLLC
                        80 Wall Street, Suite 705
                        New York, New York 10005
                        Attorneys for the Petitioner
                        Tel: (212)-968-8600
                        Fax: (212)-968-8601